UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT LAFRAMBOISE,

      Plaintiffs,      Case No. 1:21-cv-12876

v.                Honorable Thomas L. Ludington
                 United States District Judge
STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendant.
_____/

**OPINION AND ORDER (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) DENYING AS MOOT DEFENDANT'S MOTION TO FILE SUPPLEMENTAL AUTHORITY, AND (3) DIRECTING DEFENDANT TO COMPLY WITH MICHIGAN'S APPRAISAL PROCESS**

   A tree fell on Plaintiff's house. He maintained a homeowners-insurance policy with Defendant. Defendant has acknowledged coverage for the damage caused by the tree. According to Defendant, Plaintiff's house has other problems caused by occurrences expressly excluded from the policy's coverage, not by the tree impact.

   Neither Plaintiff nor Defendant contends that the policy's language is unclear or ambiguous, so Plaintiff has invoked Michigan's statutory appraisal process to determine the amount of the loss. Defendant confusingly opposes the appraisal remedy, citing the policy verbatim in 15 affirmative defenses over 13 pages as justifying a need to interpret the policy's coverage provisions rather than simply read them.

   Plaintiff framed the issue by filing suit to enforce the policy providing for the appraisal process and then filing a motion for summary judgment. As noted, Defendant appears to oppose the appraisal process and, thus, it also seems to oppose the Motion for Partial Summary Judgment.

Because neither of the parties finds any issue with the clarity of the insurance policy requiring judicial interpretation (i.e., a coverage issue), Plaintiff's Motion will be granted, and Defendant's Motion will be denied. Consequently, the parties will be directed to comply with Michigan's appraisal process.

I.

A.

During a windstorm in June 2020, a tree crashed into the southwest corner of Plaintiff Scott Laframboise's house located at 5130 North Center Road, Saginaw, Michigan 48604. ECF No. 10-5 at PageID.305. Fortunately, Plaintiff had an active insurance policy with Defendant State Farm that covered the storm-induced loss. ECF No. 7 at PageID.60. The policy's declaration page provided $267,400 of coverage for the dwelling and $200,550 for personal property. *Id.* Plaintiff timely filed an insurance claim with Defendant. *See id.*

Defendant acknowledged the loss, inspected the property, and then "issued an estimate of costs to complete repairs," calculating the "Replacement Cost Value" to be $86,942.77 and the "Actual Cash Value" to be $74,614.75. *Id.* Plaintiff hired J&J Contracting to conduct a separate analysis, which led to an estimate of $120,197.40. ECF No. 10-4 at PageID.301. One week later, Defendant paid Plaintiff $56,607.72. ECF No. 7 at PageID.60.

Plaintiff attempted to repair the damaged portion of his house. But the house's faulty foundation apparently prevented the rebuild, so he sought additional money from Defendant. Plaintiff again retained J&J to estimate the cost to "remove" and "rebuild [his] 1890 [square foot] home," to "excavate for [a] new crawl space," and to hire "license subcontractors" to install new "mechanical/electrical/plumbing." ECF No. 1-2 at PageID.14. J&J's quote to tear down, remove, and rebuild Plaintiff's home totaled $236,250.00. *Id.*

Defendant consulted a city building inspector, Bruce Palmer, who indicated that "50% of the structure would have to be removed" to repair the damaged portion of the house. ECF No. 10-3 at PageID.297 (emphasis omitted). The building inspector indicated that "the City was not requiring the entire house to be demolished," contrary to Plaintiff's contractor's determination that a full demolish was required. *Id.* Because his house was not repaired, Plaintiff contends, moisture created mold on his furniture, leading him to file a supplemental claim. *See id.* at PageID.297.

Because the parties disagreed on "what damages were related to the tree," Defendant hired Alex E. Sadovskiy, a forensic engineer from Donan Engineering Co., "to determine the extent of [the] structural damage from [the] tree impact." *See id.* at PageID.298; ECF No. 10-5 at PageID.304. Plaintiff and J&J attended the assessment "to point out areas of concern and to provide firsthand information." *Id.*

Alex Sadovskiy found that the tree impact damaged Plaintiff's house, but that much of the problems that Plaintiff and J&J identified were not direct causes of the tree fall. Mr. Sadovskiy explained that the "rafter thrust" of the tree's impact displaced the "south, east, and west walls above the edges of the south slab foundation." ECF No. 10-5 at PageID.310. But, he continued that "the tree impact" did not damage the "remaining walls," "the remainder of the roof and house to the north of the south foundation," or "the foundation." *Id.* Yet he cautioned that determining whether the south foundation "was damaged by the tree impact," would require "the concrete foundation along the east, west, and south sides of the south foundation [to] be exposed." *Id.* at PageID.310–11. He also found that the tree impact did not cause "the sloping floors and leaning walls outside of the impact zone." *Id.* at PageID.311.

In summary, Alex Sadovskiy concluded his report, providing that:

• The tree impact caused the following damage: fractured roof above the south slab-on-grade foundation; displaced ceiling above the living room; displaced north

> wall in the southeast bedroom. The south, east, and west exterior walls over the south foundation were displaced by the tree impact.
> • The house was not structurally damaged beyond the impacted area on the south side of the house.
> • The cause of the sloping floors and leaning walls outside of the damages described above are due to settlement and improper site drainage.
> • Different foundation types constructed at different times are a contributing cause of settlement.
> • A qualified professional should check the electrical and plumbing systems for damages and replace as necessary.

*Id.* at PageID.312.

Plaintiff sent Defendant a third estimate written by an unidentified entity, calculating the repair cost to be $260,955.75, which is $140,758.35 more than J&J's July 2020 estimate. *See* ECF No. 7 at PageID.61, 168–205.

On October 4, 2021, Plaintiff made a formal demand for appraisal under Michigan Compiled Laws § 500.2833(1)(m). *Id.* at PageID.61, 207. Two days later, Plaintiff appointed "Joseph Ledbetter of DisasterCo as his appraiser." *See id.* at PageID.208. Defendant did not appoint an appraiser within the 20 days mandated by § 500.2833(1)(m). Twenty-three days later, Plaintiff filed suit in the Saginaw County Circuit Court to recover benefits under the policy, alleging breach of the insurance contract against Defendant. *See Laframboise v. State Farm Fire and Cas. Co.*, No. 21-045910-CK (Mich. 10th Cir. Ct. Saginaw Cnty. filed Nov. 2, 2021).

As of November 29, 2021, Defendant has paid Plaintiff $79,798.76 for the damage to the house and $33,690.88 for living expenses (i.e., $113,489.64). ECF No. 10-6 at PageID.330–31.

Defendant removed the case to this Court under 28 U.S.C. § 1332 on December 9, 2021. *See* ECF No. 1 at PageID.1. Six days later, Defendant filed an answer to Plaintiff's Complaint. ECF No. 3. One month later, Plaintiff filed a motion for partial summary judgment, which has been fully briefed. ECF Nos. 7; 10; 11. In response, Defendant filed a motion to submit supplemental authority, doubling as a cross-motion for partial summary judgment. ECF No. 12.

**B.**

As relevant, Michigan Compiled Laws § 500.2833(1)(m) provides:

> That if the insured and insurer *fail to agree on the actual cash value or amount of the loss*, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. *The appraisers shall then set the amount of the loss and actual cash value as to each item*.

MICH. COMP. LAWS § 500.2833(1)(m) (emphases added).

In other words, when an insurer and its insured disagree on the "amount of the loss"—as opposed to an interpretation of the policy's text—the insured may demand the appraisal procedure. The two appraisers and the umpire then determine the loss's value.

**C.**

The policy provides, as relevant:

**SECTION I – LOSSES INSURED**

**COVERAGE A – DWELLING**

1. *We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and *we* will not pay for, any *diminution in value*.

*****

**SECTION I – LOSSES NOT INSURED**

1(k). *We* will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of settling, cracking, shrinking,

>bulging, or expansion of pavements, patios, foundations (including slabs, basement walls, crawl space walls, and footings), walls, floors, roofs, or ceilings;
>
>. . . .
>
>2(g). *We* will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. *We* will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from natural or external forces, or occurs as a result of any combination of *Fungus*, . . . .
>
>. . . .
>
>3(b)(2). *We* will not pay for, under any part of this policy, any loss consisting of defect, weakness, inadequacy, fault, or unsoundness in design, specifications, workmanship, repair, construction, renovation, remodeling, grading, or compaction of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

ECF No. 10-11 at PageID.386, 390, 391, 392.

Accordingly, the policy covers the damage that the tree impact caused to Plaintiff's house. By contrast, the policy does not cover losses attributable to unsound design of the house; settling of the house; cracking foundations; or defective or inadequate construction, repair, or grading.

## II.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (citation omitted). The nonmovant must show more than "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the "mere existence of a scintilla of evidence" in support of the nonmovant does not establish a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

In a diversity case like this, the court must apply "the substantive law of the state in which it sits," here, the law of the State of Michigan. *BP Expl. & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 942 (6th Cir. 2002); *see also Standard Fire Ins. v. Ford Motor Co.*, 723 F.3d 690, 692–99 (6th Cir. 2013) (applying the *lex locus delicti* in an insurance subrogation action).

**III.**

The parties disagree on whether Defendant must now submit to the appraisal process. Their disagreement hinges on whether Plaintiff's "loss" from the tree impact includes his claims for a house rebuild and mold damage. At least as the parties have framed the case, the answer requires a factual assessment of the house, not an interpretation of the policy (i.e., a coverage dispute).

### A.

Plaintiff contends that the policy's appraisal provision is void for not containing the language required by § 500.2833(1)(m). *See* ECF No. 7 at PageID.64. Plaintiff explains that "Michigan law is clear that issues over the scope of damages . . . do not preclude appraisal." *Id.* Instead, Plaintiff elaborates, "disputes over the loss fall within the exclusive province of the appraisers." *Id.* Plaintiff adds that Defendant was required "to identify a competent appraiser within 20 days of Plaintiff's demand, which it failed to do." *Id.* For these reasons, Plaintiff concludes, this Court should grant partial summary judgment in his favor and direct Defendant "to submit to the appraisal process." *Id.* at PageID.65.

Defendant responds that the appraisal process is inapt because this Court must first determine whether the policy covers the cause of the loss (i.e., interpret the policy's terms). Defendant stresses that "[i]t is undisputed that appraisal can only resolve disputes as to the amount of loss and actual cash value of the covered damages." ECF No. 10 at PageID.263. Defendant continues that "no such dispute exists, as Plaintiff has never submitted an estimate for anything less than a complete demolish and rebuild of his residence." *Id.* Defendant goes on to explain in its second affirmative defense the three matters of "coverage" that it believes prevent this Court from directing appraisal:

> (1) whether the entire house needs to be demolished as a result of the June 10, 2020 wind, rain and tree falling incident, or if the demolition is due to the house not being built pursuant to current Building Code requirements;
> (2) whether Plaintiff is entitled to payment under the Ordinance or Law provisions of his policy; and
> (3) whether Plaintiff's damages are barred, in whole or in part, by the policy's mold exclusions, any one of which precludes this matter from being resolved through appraisal, and entitling [Defendant] to a judgment in its favor.

*See* ECF No. 3 at PageID.24.

In summary, Defendant suggests that § 500.2833(1)(m) is premature because of unresolved coverage issues. By contrast, Plaintiff explains that § 500.2833(1)(m) is apt because the parties agree on the policy's terms and what they cover.

**B.**

In its Answer to Plaintiff's Complaint, Defendant admits that:

1. Defendant issued the policy to Plaintiff;
2. The policy covers Plaintiff's house;
3. The policy was effective on the date of loss, June 10, 2020;
4. The loss resulted in damages covered under the policy;
5. Plaintiff timely notified Defendant of the loss;
6. Plaintiff cooperated with Defendant during the claims process;
7. Defendant paid the claim;
8. Plaintiff demanded appraisal under § 500.2833(1)(m);
9. Defendant did not appoint an appraiser under § 500.2833(1)(m); and
10. The policy is a valid and enforceable contract.

*See* ECF No. 3 at PageID.19–21.

That is the end of the "coverage" dispute thus far, as there is no genuine issue of fact regarding whether the homeowners-insurance policy covers the cause of the loss; the parties agree on the terms of the policy. *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469–70 (Mich. Ct. App. 1991) ("Whe[n] the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property."); *accord* Johnny C. Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U. TOL. L. REV. 931, 943 (2006).

It is well established that when the insurer has "admit[ted] that [the] loss is covered under its policy," the court "is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of the loss." *The D Boys, LLC v. Mid-Century Ins.*, 644 F. App'x 574, 578 (6th Cir. 2016) (unpublished) (citing MICH. COMP. LAWS § 500.2833(1)(m)); *Scottsdale Ins. v. Altman Mgmt. Co.*,

832 F. App'x 998, 999 (6th Cir. 2021) (unpublished) (holding that appraisers "resolve (at least in the first instance) any factual disputes about the amount of an insured's loss (citing *Kwaiser*, 476 N.W.2d at 469)); *Midtown Inv. Grp. v. Mass. Bay Ins.*, No. CV 20-10239, 2021 WL 3164274, at *5 (E.D. Mich. July 27, 2021); *Shina v. State Farm Fire & Cas. Co.*, No. 20-10080, 2021 WL 391419, at *4 (E.D. Mich. Feb. 4, 2021); *see Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 710–11 (E.D. Mich. 2010) ("Whe[n] the insurer has already conceded coverage for the loss, as State Farm has here, deciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers . . . ."); *Olivet Coll. v. Ind. Ins.*, No. 1:98-CV-821, 1999 U.S. Dist. LEXIS 24118, at *18 (W.D. Mich. Sept. 2, 1999) ("[D]etermination by the appraisers of whether a particular item falls within the general description of the property they are to appraise 'reflects the method of determining the loss rather than a matter of coverage.'" (citing *Kwaiser*, 476 N.W.2d 467)).

This is true even if, as it appears here, the appraiser must decide whether some part of the loss is attributable to a covered or non-covered cause. *See Midtown Inv. Grp.*, 2021 WL 3164274, at *5 n.4 ("While the appraisers' role is in some sense always limited to valuation, appraisers are sometimes called upon to determine factual questions such as whether a particular loss is attributable to a covered or non-covered event.").

Therefore, the parties must submit to the appraisal process as set forth by § 500.2833(1)(m). *Yaldo v. Allstate Prop. & Cas. Ins.*, 641 F. Supp. 2d 644, 652 (E.D. Mich. 2009) ("[I]f the insured and the insurer fail to agree on the actual cash value or amount of loss, then either party may make a written demand for appraisal."); *see The D Boys*, 644 F. App'x at 575 (holding that the court must first determine whether the policy covers the cause of the loss before ordering the appraisal process); *Smith*, 737 F. Supp. 2d at 711 ("[T]his case does not present a coverage issue but rather

presents a scope-of-loss issue on an admittedly covered claim, a subject properly decided by the parties' agreed upon appraisers through the appraisal process."); *see also Shina*, 2021 WL 391419, at *4 (collecting cases).

In other words, contrary to Defendant's repeated contention, coverage is not at issue here. The only question remaining is the Actual Cash Value of Plaintiff's loss. Michigan law is clear that the scope of the loss is determined by the appraisers and the umpire, whom Plaintiff has demanded. Consequently, Plaintiff's Motion will be granted, Defendant's Motion will be denied, and the parties will be directed to comply with Michigan's appraisal process.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 7, is **GRANTED**.

Further, it is **ORDERED** that Defendant's Ex Parte Motion to Submit Supplemental Authority And/Or A Sur-Reply Brief in Response to Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant is **DIRECTED** to comply with the appraisal process set forth by Michigan Compiled Laws § 500.2833(1)(m) **on or before March 21, 2022**.

Further, it is **ORDERED** that the parties are **DIRECTED** to notify this Court **within 7 days** of the completion of the § 500.2833(1)(m) appraisal process and to file the related paperwork on the docket.

This is not a final order and does not close the case, as the issue of damages remains.

Dated: March 3, 2022                      s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge